**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| ERICA MANN, | : | Case No. 3:15-cv-409 |
| | : | |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.  **Introduction**

Plaintiff Erica Mann brings this case challenging the Social Security Administration's denial of her applications for a period of disability, Disability Insurance Benefits, and Supplemental Security Income.  She applied for benefits on October 10, 2012, asserting that she could no longer work a substantial paid job due to chronic back pain, degenerative disc disease, protrusions of the left side of her neck, depression, hereditary foot condition, bipolar disorder, post-traumatic stress disorder, polycystic ovarian disease, chronic ankle pain, bunions, and asthma.  Administrative Law Judge (ALJ) Gregory G. Kenyon concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff Reply (Doc. #12), the administrative record (Doc. #5), and the record as a whole.

## II.   <u>Background</u>

Plaintiff asserts that she has been under a "disability" since August 1, 2011.  At that time, she was thirty-one years old and was therefore considered a "younger person" under Social Security Regulations.  *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).  She has a high school education, and past relevant work as a management trainee and gas station attendant.  (Doc. #5, *PageID #*56).

### A.    **Plaintiff's Testimony**

At her administrative hearing on March 10, 2014, Plaintiff testified that she could not work a full-time job because she has problems dealing with people, she suffers from physical pain, and she is not able to stand for long periods of time.  *Id.* at 78-79.

Plaintiff has had back pain daily for several years.  *Id.* at 71.  She describes it as "[i]ntense at times.  Tightening.  It radiates from the middle of my back and wraps around my hips.  Sometimes going down into my right leg."  *Id.*  At the time of the hearing, she rated her pain severity at a level seven on a zero to ten scale and five on a day-to-day basis.  *Id.*  She takes Vicodin for pain but "[i]t barely takes the edge off."  *Id.*  She has also tried physical therapy and chiropractic care.  *Id.*  Her doctors discussed surgery, but it

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

"wasn't the avenue that they wanted to pursue." *Id.* at 72.

Plaintiff also has neck pain that she describes as "an aching pain, stiffness, lack of range of motion for either side all the way.  If I look all the way to the left or look all the way to the right it's difficult for me to do.  So my mobility is slightly limited." *Id.*  She takes medication for the pain.  *Id.* at 73.  Further, Plaintiff "severely" sprained her ankle two years prior to the hearing.  *Id.*  She has pain and swelling that flares up two to three times per month.  *Id.*  When her ankle swells, she needs to elevate her legs four times per day for approximately twenty minutes at a time.  *Id.* at 75.  In addition, Plaintiff has plantar fasciitis that "flares up" once every few months.  *Id.* at 74.  When it does, she uses a cane and orthotic boot.  *Id.*  She also has bunions on both feet that cause her pain.  *Id.* at 85.

Plaintiff testified that she suffers from bipolar disorder with mood swings.  *Id.* at 76.  Additionally, "on a day-to-day basis, I battle with depression and anger.  I have bouts of rage, feelings of worthlessness and hopelessness." *Id.*  She is also irritable and has panic attacks and anxiety.  *Id.* at 76, 81-84.  Her panic attacks last between fifteen and forty-five minutes and occur a couple times per month.  *Id.* at 81.  She has post-traumatic stress disorder with flashbacks and nightmares.  *Id.* at 83.  She attends therapy, and she is on a list to see a psychiatrist.  *Id.*  Her primary-care physician prescribes Abilify and Xanax.  *Id.* at 84.

Plaintiff estimated that she could stand and walk for ten minutes or for

3

approximately one to two blocks.  *Id.* at 74.  She can only sit for an hour "because [she starts] getting real tight in [her] back and [her] hips.  And pain starts to shoot down [her] leg."  *Id.* at 75.  She believes she can lift about ten pounds.  *Id.* at 75-76.

Plaintiff lives in an apartment with her son and a roommate.  *Id.* at 70, 77.  She takes care of her personal needs such as bathing and dressing.  *Id.* at 77.  She does not do many household chores.  *Id.*  Her roommate and son share most of the household responsibilities.  *Id.*  She spends most of her day sleeping because she has difficulty sleeping at night.  *Id.* at 78.  She has a driver's license but does not drive because she does not own a vehicle and driving makes her nervous.  *Id.* at 70.  In an average month, she only leaves the apartment three to four times per month.  *Id.* at 82.

**B.    Medical Evidence**

**1.    Rick Gebhart, D.O.[2]**

On February 26, 2014, Plaintiff's family-care physician, Dr. Gebhart, completed interrogatories related to her medical impairments.  *Id.* at 681-88.  He treated her for pain in her joint, ankle, and feet, anxiety, fatigue, and insomnia.  *Id.* at 682.  He opined that she is unable to withstand the pressures of meeting standards of work productivity and work accuracy without significant risk of physical or psychological decompensation or worsening of her physical and mental impairments; demonstrate reliability; and complete a normal workday or workweek without interruptions from psychologically and/or

---

[2] Dr. Gebhart's last name is spelled incorrectly as "Gebhardt" in the administrative decision.

physically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.  *Id.* at 682-83.  Dr. Gebhart explained that she has "increased levels of anxiety, mood swings that are often not managed by her medications, problems dealing with the public, problems with standing for long periods of time" and "has chronic back pain and ankle pain."  *Id.* at 683.

Further, Dr. Gebhart opined that Plaintiff could lift and/or carry no more than twenty pounds frequently and ten pounds occasionally; stand and/or walk no more than thirty minutes at one time for a total of one hour in an eight-hour workday; and sit no more than one hour at a time for a total of two hours in an eight-hour workday.  *Id.* at 684-85.  She can never climb or crawl, and she can occasionally stoop, crouch, and kneel.  *Id.* at 685.  She also needs to avoid exposure to noise because "noise tends to agitate her."  *Id.* at 686-87.  Additionally, "she performs poorly with the public, she cannot stand, sit for long periods.  Despite numerous medication adjustments she remains labile and unpredictable."  *Id.* at 687.  Dr. Gebhart concluded that she was unable to perform sedentary work on a sustained basis.  *Id.* at 688.

### 2.    Scott West, D.O.

Plaintiff consulted with Dr. West, a neurosurgeon, in October 2010.  *Id.* at 568-71.  She reported "low back pain with radiation into her hips and buttocks regions bilaterally, right greater than left."  *Id.* at 570.  Further, she experiences "constant posterior cervical pain with radiation into the intrascapular region."  *Id.* at 568.  In November 2010, Dr.

5

West noted that an MRI of her cervical spine revealed small disc protrusions but no significant neural compression.  *Id.* at 567.  He recommended physical therapy for one month.  *Id.*

On February 7, 2011, Dr. West noted that the previous MRI also revealed a small disc herniation at C4-5 left.  *Id.* at 566.  In March 2011, an MRI of Plaintiff's lumbar region revealed some mild degenerative changes at the L4-5 level.  *Id.* at 565.  Dr. West opined that it was not severe enough for surgical intervention, and he recommended conservative care and pain management.  *Id.*

On November 1, 2013, Dr. West noted that Plaintiff's most recent lumbar spine x-rays showed only very mild disc space narrowing.  *Id.* at 661.  On examination, Dr. West found tenderness to palpation in the lower lumbar region, decreased lumbar range of motion, and positive straight leg raising on the right.  *Id.*  On December 2, 2013, an MRI of her lumbar spine revealed some mild degenerative disc changes at the L4-5 level, and Dr. West recommended conservative care and pain management.  *Id.* at 658-59.

### 3.     Michelle Achor, DPM

Dr. Achor, a podiatrist, first examined Plaintiff on December 3, 2012.  *Id.* at 472-75.  Plaintiff exhibited pain upon palpation to her right ankle with focal edema, and her gait showed calcaneal eversion and severe STJ (subtalar joint) and MTJ (midtarsal joint) pronation.  *Id.* at 475.  X-rays revealed normal alignment of the right ankle joint with no loose bodies, significant talar declination, and decreased calcaneal inclination right.  *Id.*

6

Dr. Achor diagnosed chronic right ankle sprain, right peroneal tendonitis, excessive

pronation, and hallux abducto valgus.  *Id.*  Plaintiff was casted for orthotics and referred to

physical therapy.  *Id.*  Dr. Achor opined that she may have difficulty with prolonged

standing and walking.  *Id.* at 473.

On October 3, 2013, Dr. Achor opined that Plaintiff experiences moderate to severe

pain, can only stand for fifteen minutes at one time, and needs to elevate her legs at or

above waist level occasionally during an eight-hour work day.  *Id.* at 625, 627.  On

October 10, 2013, an MRI of Plaintiff's right ankle revealed attenuation of the right

anterior talofibular ligament, consistent with a prior sprain, trace subcortical bone marrow

edema, and mild right plantar fasciitis.  *Id.* at 679.  There were no acute fractures or

dislocations, and the flexor, extensor, peroneal, and Achilles tendons were intact.  *Id.* at

679-80.

### 4.    Alan Boerger, Ph.D.

Dr. Boerger evaluated Plaintiff on November 19, 2012.  *Id.* at 464-70.  He noted

that she was not receiving mental health services at that time, but she had in the past.  *Id.*

at 466.  Plaintiff appeared clean and was cooperative; her speech and thought processes

were appropriate, relevant, and coherent; and there were no indications of delusions or

hallucinations.  *Id.* at 467-68.  She exhibited difficulty with recall and Serial 7's testing,

but she was fully oriented and able to perform single-digit calculations.  *Id.* at 468.  Dr.

Boerger indicated no abnormalities of insight or judgment.  *Id.* at 468-69.

7

Plaintiff reported that "she has had a problem with anxiety for over [seven] years." *Id.* at 468.  She also has panic attacks and flashbacks to sexual abuse, childhood trauma, and getting arrested and going to jail.  *Id.*  Dr. Boerger diagnosed her with bipolar disorder, post-traumatic stress disorder, and panic disorder with agoraphobia, and assigned her a GAF score of 51.  *Id.* at 469.  He opined that her "symptoms are likely to remain for the indefinite future," and her anxiety and depression would likely limit her ability to tolerate workplace pressures.  *Id.* at 470.

### 5.    Mel Zwissler, Ph.D & Roseann Umana, Ph.D

Dr. Zwissler reviewed Plaintiff's medical records on December 5, 2012.  *Id.* at 98-111.  She opined that Plaintiff had moderate restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace.  *Id.* at 104.  Additionally, she is moderately limited in her ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  *Id.* at 108.  She is also moderately limited in her ability to interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from

8

supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in a work setting. *Id.* at 108-09.

Dr. Umana reviewed Plaintiff's records on May 3, 2013 and reached the same conclusions as Dr. Zwissler. *Id.* at 128-42.

### 6. Steve E. McKee, M.D. & Gerald Klyop, M.D.

Dr. McKee reviewed Plaintiff's records on January 11, 2013. *Id.* at 98-111. He opined that Plaintiff can occasionally lift and/or carry ten pounds and frequently lift and/or carry less than ten pounds. *Id.* at 106. She can stand for a total of two hours and sit for about six hours in an eight-hour day. She is limited in her right lower extremity from pushing/pulling. *Id.* at 106-07. She can never climb ladders, ropes, or scaffolds, frequently climb ramps/stairs, and occasionally balance, stoop, kneel, crouch, and crawl. *Id.* at 107. Dr. McKee concluded that Plaintiff is not disabled. *Id.* at 111.

Dr. Klyop reviewed Plaintiff's records on May 3, 2013 and reached the same conclusions as Dr. McKee. *Id.* at 128-42.

### III. <u>Standard of Review</u>

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security

Act—has specialized meaning of limited scope.  It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).  Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met— that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'"  *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ."  *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence

supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.    <u>The ALJ's Decision</u>

ALJ Kenyon evaluated the evidence connected to Plaintiff's applications for benefits. He did so by considering each of the five-sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[3] He reached the following main conclusions:

Step 1:    Plaintiff has not engaged in substantial gainful employment since August 1, 2011.

Step 2:    She has the following severe impairments: lumbar spine degenerative disc disease; cervical spine degenerative disc disease; obstructive sleep apnea; residuals of a right ankle sprain/peroneal tendonitis; obesity; depression/bipolar disorder; and an anxiety disorder/post-traumatic stress disorder (PTSD).

Step 3:    She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

---

[3] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

11

| Step 4: | Her residual functional capacity, or the most she could do in a work setting despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work . . . subject to the following limitations:  (1) occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) no use of the right lower extremity for pushing, pulling, or operating foot controls; (5) limited to performing unskilled, simple, repetitive tasks; (6) occasional contact with co-workers and supervisors; (7) no public contact; (8) no teamwork or tandem tasks; (9) no jobs involving sales transactions or negotiations; (10) no fast paced production work or jobs involving strict production quotas; and (11) limited to performing jobs in a relatively static work environment in which there is very little, if any change in the job duties or the work routine from one day to the next." |
|---|---|
| Step 4: | She is unable to perform any of her past relevant work. |
| Step 5: | She can perform a significant number of jobs that exist in the national economy. |

(Doc. #5, *PageID* #s 42-58).  These findings led the ALJ to ultimately conclude that

Plaintiff was not under a benefits-qualifying disability.  *Id.* at 58.

## V.    <u>Discussion</u>

Plaintiff contends that ALJ Kenyon failed to properly weigh her treating

physicians' opinions.  The Commissioner maintains that the ALJ reasonably evaluated the

medical opinions in the record and substantial evidence supports the ALJ's findings.

Social Security Regulations require ALJs to adhere to certain standards when

weighing medical opinions.  "Key among these is that greater deference is generally given

to the opinions of treating physicians than to those of non-treating physicians, commonly

12

known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted).  The

rule is straightforward:

> Treating-source opinions must be given "controlling weight"
> if two conditions are met: (1) the opinion "is well-supported
> by medically acceptable clinical and laboratory diagnostic
> techniques"; and (2) the opinion "is not inconsistent with the
> other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20

C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how

much weight is appropriate, must consider a host of factors, including the length,

frequency, nature, and extent of the treatment relationship; the supportability and

consistency of the physician's conclusions; the specialization of the physician; and any

other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The regulations also require ALJs to provide "good reasons" for the weight placed

upon a treating source's opinions. *Wilson*, 378 F.3d at 544.  This mandatory "good

reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight

placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. Rul. No. 96-2p,

1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)).  The goal is to make clear to

any subsequent reviewer the weight given and the reasons for that weight. *Id*.  Substantial

evidence must support the reasons provided by the ALJ. *Id*.

### A.  Dr. Gebhart's Opinion

The ALJ found that Dr. Gebhart's opinion is not entitled to controlling or deferential weight and instead assigned it "little weight."  (Doc. #5, *PageID* #56).  He explained,

> [I]t is unsupported by objective signs and findings in the preponderance of the record.  He is not a spinal specialist, and as discussed above, Dr. [Gebhart]'s progress notes generally show only spinal tenderness and decreased range of motion, with decreased muscle strength on only a few occasions.  With the exception of one occasion in November 2011, he consistently documented a normal gait.

*Id*.  The ALJ also gave his opinion concerning her abilities for mental work-related tasks "little weight."  *Id.*  He noted that Dr. Gebhart "is not a mental health professional and is not qualified to offer an opinion on [Plaintiff's] level of mental functioning."  *Id.*

Presumably, when the ALJ discusses whether Dr. Gebhart's opinion is unsupported by objective signs and findings, he is attempting to address the first condition of the treating physician rule.  However, the rule does not require that the opinion be supported by objective signs and findings in the preponderance of the record.  The rule requires the opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1527(c)(2).  And, "it is not necessary that the opinion be fully supported by such evidence."  Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *2 (Soc. Sec. Admin. July 2, 1996).  "Medically acceptable" means that "the clinical and laboratory diagnostic techniques that the medical source uses are in accordance with the medical

14

standards that are generally accepted within the medical community as the appropriate techniques to establish the existence and severity of an impairment." *Id.* at *3.

In this case, Dr. Gebhart's opinions are well-supported. First, an MRI of Plaintiff's lumbar spine in November 2013 revealed disc desiccation and mild disc height loss at L4-L5 and an annular tear of the posterior L4-L5 disc. (Doc. #5, *PageID* #628). Further, an MRI of her cervical spine in November 2010 revealed a left paracentral C4-C5 annular tear and extruded disc fragment with minimal to mild left cord flattening. Additionally, there was at least moderate C6-C7 foraminal stenosis in contact with the left greater than right exiting C7 nerve root. *Id.* at 385. Second, Dr. Achor's treatment notes support Dr. Gebhart's opinion. For example, Dr. Achor notes that an x-ray revealed "significant talar declination and decreased calcaneal inclination" in Plaintiff's right foot. *Id.* at 472. Finally, although the ALJ is correct that Dr. Gebhart's notes show spinal tenderness, decreased range of motion, and a normal gait, his notes also demonstrate Plaintiff's consistent reports of pain in her ankle and back. Notes from Dr. Gebhart's office in 2011 indicate Plaintiff reported severe pain in her ankle and back, and in June 2012, she reported worsening pain in both her lower back and ankles. *Id.* at 412. Together, this evidence supports Dr. Gebhart's opinion.

The ALJ does not address the second condition of the treating physician rule—whether Dr. Gebhart's opinion is not inconsistent with the other substantial evidence in the case record. He mentions that Dr. Achor's records are "somewhat inconsistent" with

Dr. Gebhart's records, *Id.* at 55, but he does not address whether Dr. Gebhart's opinion is *not inconsistent* with Dr. Achor's opinion as § 404.1527(c)(2) requires. *Id.* at 55.

However, even if Dr. Gebhart's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *4 (Soc. Sec. Admin. July 2, 1996). The ALJ mentioned only one other reason for discounting Dr. Gebhart's opinion—his lack of specialization.

The ALJ is correct that Dr. Gebhart is not a spinal specialist. However, he was Plaintiff's treating physician for several years. He stated that he has been treating her from April 19, 2013, but as early as September 26, 2012, he reviewed and signed off on an appointment with her. *Id.* at 400, 405, 681. Although specialization is a factor to be considered under the Regulations, it does not permit an ALJ to fully reject a treating physician's opinions without providing more specific reasoning concerning his or her supposed lack of expertise. Further, the ALJ fails to acknowledge that "treating physicians have the best detailed and longitudinal perspective on a claimant's condition and impairments and this perspective 'cannot be obtained from objective medical findings alone.'" *Gentry*, 741 F.3d at 723 (citations omitted).

In contrast to the "little weight" the ALJ assigned to Dr. Gebhart's opinion, he concluded that the opinions of State agency record-reviewing physicians, Dr. McKee and Dr. Klyop, were entitled to "great weight." He asserts that their opinions are supported by

objective signs and findings in the preponderance of the medical record.  However, the ALJ does not acknowledge that Dr. McKee reviewed Plaintiff's records in January 2013, over one year before Dr. Gebhart's opinion in February 2014, and Dr. Klyop reviewed Plaintiff's records in May 2013.  Additionally, the ALJ does not recognize that despite the amount of time that had passed, the three physicians reach some of the same conclusions.  For example, they agree that Plaintiff can occasionally lift and/or carry ten pounds.  The most significant difference between their opinions is the total number of hours Plaintiff can sit in an eight-hour day.  Dr. Gebhart indicates that she can only sit for a total of two hours, and Dr. McKee and Dr. Klyop opine she can sit for a total of six hours.  However, given the time difference between opinions, it is not unreasonable for the length of time Plaintiff can sit in an eight-hour period to decrease over time.

The ALJ also rejected Dr. Gebhart's opinion on Plaintiff's abilities for mental work-related tasks because he "is not a mental health professional and is not qualified to offer an opinion on the claimant's level of mental functioning."  *Id.* at 56.  The Commissioner asserts that because Dr. Gebhart did not provide separate opinions for Plaintiff's physical and mental impairments, "the ALJ reasonably conducted a single controlling and deferential weight evaluation."  (Doc. #11, *PageID* #778).  However, "adjudicators must always be aware that one or more of the opinions may be controlling while others may not."  Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *2 (Soc. Sec. Admin. July 2, 1996).  The ALJ did not properly weigh Dr. Gebhart's opinion concerning

17

Plaintiff's mental health.  Not only did he fail to consider whether Dr. Gebhart's opinion was well-supported or not inconsistent under the treating physician rule, he only considered one factor.

The reasons provided by the ALJ do not amount to "good reasons" for rejecting Dr. Gebhart's opinion.  "The failure to provide 'good reasons' for not giving [the treating physician's] opinions controlling weight hinders a meaningful review of whether the ALJ properly applied the treating-physician rule . . . ."  *Gayheart,* 710 F.3d at 377.  The ALJ's reasons for rejecting and placing "little weight" on Dr. Gebhart's opinions are not supported by substantial evidence.

### B.     Remand Is Warranted[4]

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right.  *Bowen*, 478 F.3d at 746.  Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons

---

[4] In light of the above discussion and the resulting need to remand this case, an in-depth analysis of Plaintiff's challenge to the ALJ's assessment of Dr. Achor's opinion is unwarranted.

18

supported by substantial evidence for finding the plaintiff to lack credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, particularly the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulation and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT:**

1.    The Commissioner's non-disability finding be vacated;

2.    No finding be made as to whether Plaintiff Erica Mann was under a "disability" within the meaning of the Social Security Act;

3.    This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4.    The case be terminated on the Court's docket.

Date: January 6, 2017                    *Sharon L. Ovington*
                                          Sharon L. Ovington
                                          United States Magistrate Judge

20

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).